HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Wisconsin insurance company,<br><br>    Plaintiff,<br><br>  v.<br><br>SCI INFRASTRUCTURE, LLC, a Washington limited liability company, et al.,<br><br>    Defendants. | CASE NO. 3:20-cv-06084-RAJ<br><br>ORDER |

## I.   INTRODUCTION

This matter comes before the Court on Defendants' Motion to Stay. Dkt. # 36. Plaintiff opposes the motion. Dkt. # 40. For the reasons below, the Court **DENIES** the motion.

## II.   BACKGROUND

Plaintiff Liberty Mutual Fire Insurance Company ("Liberty" or "Plaintiff") filed suit in this Court for declaratory judgment against Defendants SCI Infrastructure, LLC ("SCII"), Black Rock Resources, Inc. ("BRR"), Aztec Equipment Company, Inc.

("Aztec"), Scoccolo Construction, Inc. ("SC"), Pinnacle Crushing & Construction, LLC ("Pinnacle"), Patrick Scoccolo ("Patrick"), Mark Scoccolo ("Mark"), Black Lake Quarry, LLC ("BLQ"), and Black Lake Resources, Inc. ("BLR"), (collectively "Defendants"). Dkt. # 1. This action arises out of an underlying dispute involving a gravel mining operation. *Id.* ¶ 3.2. The Court will summarize the facts of the dispute as relevant here.

On January 13, 2017, BLQ, which owned three gravel pits and leased a fourth (collectively, the "Properties") entered into a Mining Materials Processing and Operating Agreement (the "Agreement") with BRR, which is owned by Mark and Patrick Scoccolo. *Id.* ¶ 3.4. BLQ and BRR formed a third entity, BLR, as a signatory to the Agreement, which contracted with other entities, including SCII, Aztec, and Pinnacle, to perform gravel mining activities pursuant to the Agreement. *Id.* ¶¶ 3.6-3.7. On August 24, 2018, BLQ's owner sent the Scoccolos a "Notice of Default" claiming that BRR breached the Agreement "by abandoning the project, recording and/or allowing other affiliated entities to record liens against the Properties, and failing to make the required payments," among other claims giving rise to tort liability. *Id.* ¶ 3.9-3.11. The Notice of Default stated that "[t]hese and other torts may be subject to coverage under BRR's CGL policy, as advertising injuries to BLQ, and BLQ demands that BRR tender this notice of default and these claims to its CGL carrier, and demand defense and indemnity." *Id.* ¶ 3.14.

On March 7, 2019, BLQ filed a complaint in Washington State Superior Court in Thurston County No. 19-2-01233-34 (the "Underlying Action"), naming BRR, Patrick, and Mark as defendants. Dkt. # 1 ¶¶ 3.15-3.16. The complaint alleged that BRR committed "tortious acts" including waste, trespass, and conversion by dumping materials on the Properties and by removing materials from the Properties without authority. *Id.* ¶ 3.17. The complaint alleged that BRR interfered with BLQ's pending sale of the Properties by asserting rights to the Properties that it did not have, recording liens, and communicating its assertion of rights to the prospective buyer. *Id.* ¶ 3.19. The

complaint also alleged that Patrick and Mark had "misrepresented material facts to BLQ." *Id.* ¶ 3.20. On March 26, 2019, BLQ filed an amended complaint adding BLR as a plaintiff and adding SCI, SCII, Aztec, and Pinnacle as defendants. *Id.* ¶ 3.21-3.22.

Less than a week later, on April 1, 2019, Liberty issued a commercial general liability policy for SCII for the policy period from April 1, 2019 to April 1, 2020 (the "Policy"). *Id.* ¶ 3.26. The Policy included Aztec, BRR, and SCI, among other entities, as additional named insureds. *Id.* ¶ 3.27. The Policy contained two coverage plans: Coverage A – Bodily Injury and Property Damage Liability; and Coverage B – Personal and Advertising Injury. *Id.* ¶ 3.28.

On November 6, 2019, BLQ filed a second amended complaint re-alleging the substantive allegations set forth in the prior complaints and adding new allegations regarding additional liens recorded against the Properties. *Id.* ¶ 3.30-3.32. SCII tendered the defense of the second amended complaint to Liberty pursuant to the Policy. *Id.* ¶ 3.33. Liberty agreed to provide a defense "subject to a full reservation of rights, including the right to file a declaratory judgment action, seek an order allowing it to withdraw from the defense being provided, and to seek allocation and/or reimbursement of defense costs." *Id.* ¶ 3.34.

On November 4, 2020, Liberty filed a complaint in this Court with two counts. *Id.* The first count seeks "[d]eclaratory relief pursuant to the Declaratory Judgments Act, 28, U.S.C. § 2201, that Liberty has no duty to defend or indemnify the Underlying Defendants in the Underlying Action" and "that Liberty may withdraw from the defense currently being provided in the Underlying [A]ction." *Id.* at 14. The second count seeks "an order declaring that Liberty is entitled to recoup from the Underlying Defendants the costs incurred in providing a defense under a reservation of rights" and such relief as deemed just and appropriate by the Court. *Id.* at 14. Liberty later voluntarily dismissed its claims against Defendants BLQ and BLR without prejudice. Dkt. # 14. Defendants

filed an answer to the complaint and counterclaim alleging that Liberty acted in bad faith "by attempting to litigate facts that are at issue in the Underlying Action." Dkt. # 16 at 15.

On May 19, 2021, Defendants filed the pending motion to stay. Dkt. # 36. The next day, Liberty filed a motion for partial summary judgment on its first cause of action and seeking an order declaring that "Liberty has no duty to defend or indemnify the [Defendants] in the Underlying Action and that it may withdraw the defense currently being provided." Dkt. # 38 at 30. In its response to Defendants' motion to stay, Liberty stipulated to a stay of this action "solely with respect to those coverage defenses that are set forth in Count I[1] of its Complaint and which are not addressed in its Motion for Partial Summary Judgment." Dkt. # 40 at 4. Liberty contends that because the Court can "resolve coverage without finding any facts of consequence to the underlying state court lawsuit, Defendants' claim of prejudice is without merit." *Id.*

### III.   DISCUSSION

A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). The moving party bears the burden of establishing that a stay is necessary. *Id.* at 708.

This matter involves the Declaratory Judgments Act, 28 U.S.C. § 2201, under which a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Although the Court "has jurisdiction of the suit under the Federal Declaratory Judgments Act . . . it [is] under no compulsion to exercise that jurisdiction." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). The Supreme Court in *Brillhart* held that in a situation in which another proceeding was pending in state court in which the matters at

---

[1] Liberty noted that it does not agree to stay its request for reimbursement under Count II. Dkt. # 40 at 4.

ORDER- 4

issue before the federal court could be fully adjudicated, "a declaratory judgment in the federal court was unwarranted." *Id.* at 495. The Supreme Court explained its reasoning accordingly:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Id.* at 495.

Over fifty years later, the Supreme Court reinforced the "unique and substantial discretion [of district courts] in deciding whether to declare the rights of litigants" under the Declaratory Judgments Act. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). In *Wilton*, the Court concluded that the district court had acted properly when it stayed an action for declaratory relief "when parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court." *Id.* at 290.

In determining whether to exercise its discretion to retain jurisdiction over such a declaratory judgment action, a district court should "ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 495. This evaluation, the Supreme Court explained, may involve an inquiry as to the scope of the pending state court claims, the nature of defenses, and whether the claims of all parties can be adjudicated satisfactorily in the state proceeding. *Id.* Specifically, a district court's exercise of discretion should be guided by three factors: (1) the court should avoid unnecessary determination of state issues; (2) it should discourage the filing of declaratory actions as a means of forum shopping; and (3) it should not engage in duplicative litigation. *Am. Cas. Co. of Reading, Pennsylvania v. Krieger*, 181 F.3d 1113, 1118 (9th Cir. 1999) (internal citation omitted).

Here, Defendants move the Court to exercise its discretion to stay this action until factual determinations have been made in the Underlying Action in line with the *Brillhart-Wilton* doctrine. Dkt. # 36 at 2. The Court finds that such a stay is unwarranted.

With respect to the first factor, the Court finds that it need not engage in unnecessary determination of state issues. The question of whether the Policy covers the Defendants for the alleged actions and damages in the Underlying Action is not before the state court. Dkt. # 40 at 8. *See Krieger*, 181 F.3d at 1119 (holding that "[b]ecause the state court case did not include the coverage issue, and because the coverage issue in the federal action was not contingent on any further state court proceedings, the district court found good cause to continue to exercise its jurisdiction"). Indeed, the legal issues before the state court are distinct from the declaratory judgment sought here. As Liberty correctly notes, the issues before the state court involve whether Defendants engaged in the alleged conduct, and if so, whether they are liable to BLR based on that conduct. Dkt. # 40 at 10. The issues before this Court, on the other hand, are whether the Policy covers Defendants, assuming that the allegations are true, and whether the Defendants had knowledge of the allegations before the Policy went into effect. *Id.* Based on the distinct legal issues before this Court and the state court, this Court's analysis will not involve a "needless determination of state law issues." *Id.* This weighs against a stay.

With respect to the second factor, there is no evidence of forum-shopping, and Defendants do not make an argument to the contrary. In their reply brief, they merely note that a stay may be appropriate even in the absence of forum-shopping. Dkt. # 41 at 7 n.3 (citing *N. Pac. Seafoods, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, C06-795RSM, 2008 WL 53180, at *4 (W.D. Wash. Jan. 3, 2008)). Absent evidence of forum-shopping, this factor leans slightly against a stay.

Finally, with respect to the third factor, the Court finds that a stay is not warranted to avoid duplicative litigation. Indeed, as already discussed, the legal issues before this court in the declaratory action are distinct from those before the state court. Moreover, the Defendants' bad faith counterclaim adds another claim that is not before the state court—and which does not fall under the Declaratory Judgments Act—that requires this Court to exercise jurisdiction. The federal court action, therefore, is not duplicative of the state court action. This factor weights against a stay.

Based on the foregoing analysis, the Court hereby finds that the *Brillhart* factors do not weigh in favor of a stay here.

## IV.   CONCLUSION

For the reasons above, Defendant's Motion for Stay is **DENIED**. Dkt. # 36.

DATED this 2nd day of August, 2021.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER- 7